IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DOUGLAS B. STALLEY, On behalf of the United States of America — PLAINTIFF

vs. CASE NO. **4:06CV00629GH**

CATHOLIC HEALTH INITIATIVES, ET AL. — DEFENDANTS

## ORDER

Plaintiff filed this action on behalf of the United States of America seeking to recover monies he claims is owed Medicare under the Medicare Secondary Payer ("MSP") statute, 42 U.S.C. § 1395y(b)(2). This action is one of many recently filed by plaintiff in several jurisdictions.[1]

Plaintiff alleges that "on numerous occasions," defendant Medicare-participating health care provider Catholic Health Initiatives ("CHI"), "by and through its employees and agents, caused harm to Medicare recipients who were patients in CHI's hospitals, thereby triggering legal obligation on the part of CHI and the other primary payer Defendants . . . to pay for any consequential medical service, treatment, or medication. . . CHI provided medical services, treatment and medication to such Medicare recipients who were harmed by CHI's own conduct, and thereafter received reimbursement from Medicare for treating those injured Medicare recipients." (complaint, ¶ 7) The complaint alleges that "[d]efendants, as primary payers, breached their duties to Medicare by not paying for the care that injured Medicare recipients received as a result of CHI's conduct and further by

[1] A listing of cases filed in Florida, Arkansas, Tennessee and Pennsylvania can be found on the Pacer Service Center, U.S. Party/Case Index http.//pacer.uspci.uscourts.gov.

not reimbursing Medicare after Medicare provided conditional payment for the care that such Medicare recipients received as a result of CHI's conduct."(complaint, ¶ 9).

Defendants have filed a motion to dismiss. They contend that plaintiff lacks standing to sue either on behalf of himself or the United States, that the complaint should be dismissed for lack of personal jurisdiction as to the Alergent entities and Advocate Insurance Resources, that the complaint should be dismissed for failure to comply with the requirements of Fed. R. Civ. P. 8(a) and 9(b), and that the complaint should be dismissed for failure to state a claim.

Medicare is a federal health insurance program, generally benefitting the aged and the disabled. *Blue Cross & Blue Shield of Texas, Inc. v. Shalala*, 995 F. 2d 79, 71 (5th Cir. 1993). The MSP statute was enacted in 1980 to reduce federal health care costs. *Glover v. Liggett Group*, *Inc.*, 459 F.3d 1304, 1306 (11th Cir. 2006). Under the MSP,"Medicare [is] the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer." *Id*. *See Thompson v. Goetzman*, 337 F.3d 489, 495 (5th Cir. 2003)(In enacting the MSP, Congress "sought to reduce Medicare costs by making the government a secondary provider of medical insurance coverage when a Medicare recipient has other souces of primary insurance coverage." )

The statute provides a Medicare payment "may not be made . . with respect to any item or service to the extent that payment has been made or can reasonably be expected to be made under" a primary plan. 42 U.S.C. § 1395y(b)(2)(A). A "primary plan" includes "a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A)(ii). The MSP statute provides

for "conditional payments" for services where the primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly . . . " 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare may seek reimbursement from the primary plan or any entity receiving payment from a primary plan if the primary plan had responsibility to make the payment. 42 U.S.C. § 1395y(2)(B)(ii). Responsibility for reimbursing Medicare "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination of admission of liability), of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id*.

Enforcement of a primary plan's payment of reimbursement obligation may be made by a direct cause of action by the government, 42 U.S.C. § 1395y(b)(2)(B)(iii); a subrogation claim brought by the government, 42 U.S.C. § 1395y(b)(2)(B)(iv); and by a private cause of action.

Congress added a private cause of action in 1986. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, § 9319, 100 Stat. 1874 (1986). The provision sets forth:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). MSP liability, that is double damages, attaches when the primary plan fails to make payment "promptly" or within 120 days of a claim being filed or a service being rendered. 42 C. F. R. § 411.50(b). *See United Seniors Ass'n, Inc. v. Phillip Morris USA,* 2006 WL 241977, *1 (D. Mass. Aug. 28, 2006). " If the Medicare beneficiary on whose behalf a conditional payment is made has a tort claim, Medicare may seek reimbursement from the tortfeasor's insurance carrier, but only 'after, and to the extent that, such carrier's liability under the [tortfeasor's] private policy for the services has been determined.' The same rules apply when the tortfeasor has internalized the insurance

function by creating a 'self-insured plan.'" *Id.* (quoting 54 Fed. Reg. 41,716-01 at 41,727 (Oct. 11, 1989). *See also* 42 C.F.R. § 411.52(a).

Plaintiff seeks to bring his claim under the above MSP provision.

CHI, Bergen Mercy Foundation, Inc., Alegent Health-Bergen Mercy Health System, and Alegent Health (Providers) are alleged to be participant providers in the Medicare program.[2] Plaintiff contends that the Providers bill Medicare for the medical mistakes they commit. Plaintiff asserts that under the MSP statute, none of the costs should be borne by Medicare or the taxpayers. Defendants Preferred Professional Insurance Company and Advocate Insurance (Insurers) are alleged to insure the Providers. Plaintiff asserts that the defendant Insurers allow the defendant Providers to bill Medicare for payments for which all defendants are primary payers under the law. Plaintiff asserts that the defendants have not reimbursed Medicare as required under the MSP statute.

Plaintiff does not allege that he ever received medical treatment at any of the defendant Providers, that he is a Medicare recipient, or that he knows of or was victim of any medical mistakes allegedly committed by the defendant Providers. Defendants assert

---

[2]Defendant CHI states that it is a non-profit tax exempt Colorado corporation, and sponsors market-based organizations, including 69 acute care hospitals, 43 long-term care, assisted living and residential facilities, five community health service organizations and two accredited nursing colleges in 19 states, including St. Vincent Health System in Arkansas. The other defendant Providers are, according to defendants, non-profit Nebraska corporations. Alegent Health states that it provides governance, administrative management and direction to all operations of Bergan Mercy Health System (sponsored by CHI) and Immanuel Medical Center (sponsored by Immanuel Health Systems). These consolidated operations include, among others, five acute-care metropolitan hospitals located in the Omaha-Council Bluffs area; three rural hospitals located in Iowa and Nebraska; one long-term care facility in Omaha; and an ambulatory service facility in Omaha. Alegent Health-Bergan Mercy Health System , according to defendants, includes Alegent Health-Bergan Mercy Medical Centre in Omaha, Nebraska and Alegent Health-Mercy Hospital in Council Bluffs, Iowa. The Bergan Mercy Foundation, Inc. claims it is not a Medicare provider and does not own or operate a Medicare provider. It claims to receive and manage financial gifts contributed in support of Alegent Health-Bergan Mercy Medical Center.

that plaintiff does not have standing to bring this action. Plaintiff counters that the MSP statute is a *qui tam* statute.

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the Court lacks subject matter jurisdiction. Before reaching the merits, the Court must determine whether jurisdiction exists, including a determination of whether the plaintiff has standing. *Ashley v. United States Dept. of Interior*, 408 F. 3d 997, 1000 (8th Cir. 2005).

A plaintiff's standing to maintain his lawsuit is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The burden is on plaintiff to establish his standing under Article III. *Id.* at 561. If the plaintiff lacks standing, the Court does not have subject matter jurisdiction. *Young America v. Affiliated Computer Services*, 424 F. 3d 840, 843 (8th Cir. 2005)(citation omitted). "To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Id.*

It is clear that plaintiff does not meet the basic standing requirements. At the very least, he does not allege an injury in fact. Plaintiff, however, asserts he is bringing the claim "on behalf of the United States of America." He contends that the MSP statute is a *qui tam* statute and therefore he has standing to bring his claim. Plaintiff's construction of the MSP statute is at odds with the definition of a *qui tam* action.

A *qui tam* action may be brought by a private person (the relator) in the name of the government against the alleged false claimant. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 (2000) ("*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur,* which means 'who pursues this action on our Lord the King's behalf as well as his own.' The phrase dates from at least the time of Blackstone.") A *qui tam* relator sues on

behalf of the government as an agent of the government, "which is always the real party in interest." *United States ex rel. Rodgers v. State of Arkansas*, 154 F. 3d 865, 868 (8th Cir. 1998) (citation omitted). The government makes a partial assignment of its claim to the private litigant. 529 U.S. at 773 ("we are asserting that a *qui tam* relator is, in effect, suing as a *partial* assignee of the United States"). The relator shares in the recovery by the government. For example, under the False Claims Act, 31 U.S.C. § § 3729 *et seq* (FCA), the relator gets between 15 and 25 percent of the recovery if the government prosecutes the action; if government does not intervene, the relator gets between 25 and 30 percent. 31 U.S.C. § 3730(d)(1)-(2). [3]

There is nothing in the language of the MSP to provide for an action on behalf of the United States. Rather, the MSP allows only for a private cause of action for one who has been injured. *See Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81,84 (2d Cir. 1972)(" In our jurisprudence, there is no common law right to maintain a *qui tam* action; authority must always be found in legislation.")[4]

Additionally, the MSP does not have any of the protections and procedures provided by modern *quit tam* statutes. The procedural obligations of the relator in a *qui*

---

[3]Plaintiff points to a number of other statutes which he contends supports his position that the MSP is a *qui tam* statute. These statutes are inapposite. The Endangered Species Act provides that a person may commence a civil suit on *his or her own* behalf for *injunctive relief* against a person alleged to be in violation of the Act or against the Secretary of the Interior to compel enforcement of the Act. 16 U.S.C. § 1540(g)(1). That statute does not authorize suits on behalf of the federal government for double damages. In three older statutes cited by plaintiff, the "informer" receives one half of a penalty or forfeiture exacted. 46 App. U.S.C. § 723 ("Forfeitures for taking wrecked property to foreign ports"); 35 U.S.C. § 292 (false marking of patent); 18 U.S.C. § 962 (arming vessel against a friendly nation)

[4]In support of finding that Congress did not intent for MSP to be a *qui tam* statute, the Court notes that the MSP's private right of action was enacted during the same month and year that Congress created the FCA's express *qui tam* language. *See* Omnibus Budge Reconciliation Act of 1986, Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986) (adding private cause of action to MSP) and False Claims Amendments Act of 1986, Pub. L. 99-562, 100 Stat. 3153 (1986) (creating new FCA *qui tam* action).

*tam* action establish that the government is the real party in interest. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F. 3d 552, 560 (8th Cir. 2006). [5]

Plaintiff seeks to bring a private cause of action under the MSP. He does not have standing to do so. He has not suffered an injury in fact. The MSP is not a *qui tam* statute conferring upon him the right to bring this action.

Thus, the complaint must be dismissed under Fed. R. Civ. P. 12(b)(1).

Alternatively, the Court finds that the case must be dismissed because plaintiff has failed to state a viable claim under the MSP.

In order to state a claim under the MSP statute, plaintiff must allege *inter alia* that the defendant failed to make the appropriate payment to Medicare for the item or service. *Glover v. Phillip Morris USA*, 380 F. Supp. 2d 1279, 1290 (M. D. Fla. 2005). The MSP states clearly that the primary plan's responsibility for payment of the item or service may be demonstrated by judgment, settlement or "other means." 42 U.S.C. § 1395y(b)(2)(B) (ii). Courts considering the statute have found that a cause of action against the alleged tortfeasor only arises where the responsibility to pay medical costs has been established. *See Mason v. American Tobacco Co.,* 346 F. 3d 36, 43 (2d Cir. 2003) ("trigger for bringing a MSP claim is not the pendency of a disputed tort claim, but the established obligation to pay medical costs . . . )

---

[5]Among the protections in the FCA are the requirements that (1) the *qui tam* plaintiff serve the complaint and written disclosure of material evidence on the Government before the complaint is served on the defendant;(2) the complaint be filed in camera and remain under seal while the Government conducts an investigation, and must not be served on the defendant except by court order; (3) the Government must either intervene and take over conduct of the action before the defendant is served or notify the court that the private person will be conducting the action; (4) if the Government proceeds with the action, it has primary responsibility for prosecuting the action, and is not bound by the acts of the relator; (5) the Government may dismiss or settle the action over the objection of the relator; (6) the Government must provide written consent before the case may be dismissed; (7) the Government is protected from liability for litigation expenses of the *qui tam* relator, and (8) the government receives at least 70 to 85 percent of any recovery. 31 U.S.C. § 3730(b)-(f).

The issue was addressed very recently in *Glover v. Liggett Group, Inc.*, 459 F. 3d 1304 (11th Cir. 2006). The Eleventh Circuit held that "§ 1395y(b)(3) does not create a private cause of action against alleged - as opposed to proved–tortfeasors whose responsibility for payment of medical costs has not been previously established." "[A]n alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A)." *Id*. That is, the defendants' responsibility to pay for items or services must be demonstrated as a condition precedent to their obligation to reimburse Medicare under § 1395y(b)(2)(B)Iii). *Glover*, 459 F. 3d at 1309 ("Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment) Defendant's obligation to reimburse Medicare does not exist under the relevant provisions."). The court concluded that any other interpretation would "drastically expand federal court jurisdiction by creating a federal forum to litigate any state tort claim in which a business entity allegedly injured a Medicare beneficiary, without regard to diversity . . . or amount in controversy;" would deny defendants due process in contesting liability; and would allow individuals to litigate cases without complying with class action requirements. *Id*. at 1309.

The district court in *United Seniors Ass'n v. Phillip Morris USA,* 2006 WL 2471977 (D. Mass. Aug. 28, 2006) followed the reasoning of the *Glover* court and dismissed a complaint brought by an association acting as a "private attorney general" to recover medical expense reimbursements made by Medicare to treat Medicare recipients for illnesses attributable to cigarette smoking. The court agreed with *Glover* that an MSP private cause of action can only be brought after the alleged tortfeasor's responsibility for payment has been demonstrated.

Plaintiff has not established defendants' responsibility for payment.

In a case somewhat analogous the court refused to find that the plaintiff had a cause of action under the MSP challenging the terms of workers compensation lump-sum settlements.

> As a preliminary matter it must be recognized that since the inception of the MSP there is not a single reported case in which the theory expressed by Ms. Frazer has been pled or adjudicated. . . . There is no authority from any court which has held that 42 U.S.C. § 1395y(b)(3)(A) authorizes a worker's compensation claimant who has never been required to pay for medical care arising from an industrial accident, who has never had a claim denied by the carrier, who is not alleged to be a recipient of Medicare benefits or eligible for such benefits within thirty months to assert a cause of action for "double damages" allegedly arising from a failure to "··· provide for payment ···" of a medical expense which might be incurred at some unspecified future date. Indeed, all reported cases addressing the question have presumed that such a cause of action and the relief afforded by the statute arises only when a discrete claim has accrued and will be paid or has been paid by Medicare. The consensus of reported cases is that "a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they are responsible, *which are borne in fact by Medicare*".

*Frazer v. CNA Ins. Co.* 374 F. Supp.2d 1067, 1078 (N.D. Ala. 2005)(emphasis in original).

The court further stated that *Manning v. Utilities Mutual Ins. Co. Inc.,* 254 F. 3d 387 (2d Cir. 2001) "serves to make clear that the private cause of action is a medical recoupment provision. Nothing in *Manning* suggests a liability exists for 'double damages' for an unliquidated, inchoate future medical expense." *Id.* at 1078-79.

Plaintiff seeks to extend the MSP statute beyond that intended by Congress. Plaintiff asserts that somewhere, sometime, somehow, some hospital or hospitals owned by defendants must have caused some injury or illness to one or more Medicare beneficiaries for which Medicare should be reimbursed. Allowing plaintiff to proceed with this action would allow any individual to sue any Medicare provider on the off-chance that some Medicare recipient must have been injured by or harmed and that Medicare is entitled to some as yet undetermined reimbursement. Certainly Congress did not envision such a speculative cause of action.

As discussed above, the courts that have considered the issue have rejected plaintiff's interpretation. The Court finds that the complaint fails to state a claim under the MSP statute and is dismissed under Ruel12(b)(6).

Accordingly, the motion to dismiss is granted. The complaint is hereby dismissed with prejudice.

IT IS SO ORDERED this 20th day of October, 2006.

George Howard, Jr.
UNITED STATES DISTRICT JUDGE